IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

REMEDIOS NARIO SOTO,            )
                                )
            Movant,             )
                                )
      v.                        )        1:97CR291-2
                                )
UNITED STATES OF AMERICA,       )
                                )
            Respondent.         )

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Movant, Remedios Nario Soto, a federal prisoner, has brought a motion for return of property pursuant to Fed. R. Crim. P. 41(e). (Docket No. 243.) In that motion he seeks the return of a wallet that was seized from his person at the time of his arrest and that contained $600.00 in United States currency, a drivers license, a credit card, a green card, and a Mexican Consulate identification. He also seeks the return of $10,520 in United States Currency that was seized from his home. He claims that the listed property was seized by the Federal Bureau of Investigation (FBI) and the Drug Enforcement Administration (DEA), that it has not been returned, that it was not used in illegal activities and was not the proceeds

of such activities, and that there is no pending civil or criminal proceeding against him.[1]

The matter of Movant's wallet and its contents can be dealt with quickly. The government has responded to Movant's claims and has provided the affidavit of DEA Agent Danease Newell. She states that she reviewed the evidence records of the DEA pertaining to Movant. Those records do not reveal that the DEA has in its possession the wallet or its contents. However, the DEA did seize a Temporary Resident Card, but not a green card, in Movant's name. (Docket No. 248, Newell Decl. ¶ 4.) The government does not object to returning that card.[2] As for the rest of the items, the evidence shows that they are not in the federal government's possession. Although Movant may believe otherwise, he offers no proof to support his belief. The Court cannot order the government to return what it does not have. *United States v. Presley*, 52 F.3d 64, 70 (4th Cir. 1995). Therefore, Movant's motion should be denied as to the wallet and its contents except for the Temporary Resident Card,

---

[1] Although no charges are currently pending, Movant was charged in this Court with being part of a conspiracy to distribute cocaine hydrochloride. (Docket No. 34.) He was found guilty by a jury (Docket No. 132) and sentenced to serve 204 months of imprisonment (Docket No. 182).

[2] The government also notes that it seized two driver's licenses from Movant which were issued in other names. He is not entitled to the return of these documents. *Stancil v. United States*, No. 91-56273, 1992 WL 318700, at *1 (9th Cir. 1992)(motions for return of property should be denied as to false or fraudulent identification documents, citing *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1061 (9th Cir. 1991)).

which the government may return to Movant in care of the United States Bureau of Prisons.[3]

The $10,520 in cash is a slightly more complicated matter. The DEA did seize that currency from Amanda Soto. A forfeiture report was prepared and submitted and the DEA adopted the seizure of the currency. It then began an administrative forfeiture proceeding. (Docket No. 248, John Hieronymus Decl. ¶ 4 (a).) On January 6, 1998, the DEA sent three written notices of the seizure by certified mail, return receipt requested to "LNU Remedios," Remedios Nario Soto, and Amanda Soto at 631 Hillary Court, Asheboro, NC 27203. The notices were accepted on January 13, 1998. (*Id*. ¶¶ 4 (b), (d), (e).) Also on January 6, 1998, the DEA sent notice to Remedios Nario Soto, Prisoner ID No. 19087-057, Randolph Co. Jail, 790 New Century Dr., Asheboro, NC 27203. It was accepted on January 12, 1998, but returned the next day with the envelope marked "RETURN TO SENDER. Attempted–Not Known." (*Id*. ¶ 4(c).)

Next, on January 14, January 21, and January 28, 1998, notice of the seizure was published in *USA Today*, a newspaper of general circulation in North Carolina. (*Id*. ¶ 4 (f).) Finally, on February 17, 1998, a notice of the seizure was sent by certified mail to Remedios Soto, #19087-057, C/O Guilford County Jail, 401 West Sycamore Street, Greensboro, NC 27402. It gave movant twenty days to file a claim contesting the seizure and forfeiture. The

---

[3]Movant should be aware that, due to the passage of time, it is possible that the government may no longer have possession of the card. As already stated, the government cannot return what it does not have.

mail was signed for on February 23, 1998. (*Id.* ¶ 4 (g).) Neither Movant nor anyone else ever filed a claim. On August 17, 1998, the DEA administratively forfeited the $10,520 to the United States. (*Id.* ¶ 4(h).)

Movant did not file an administrative claim, but did file his motion for return of property on February 15, 2000. Later that year, the Civil Asset Forfeiture Reform Act of 2000 (CAFRA) was enacted. That act codified existing practice in the federal courts where administrative forfeitures are involved and now provides the exclusive remedy for challenging a declaration of forfeiture. *Mesa Valderrama v. United States*, 417 F.3d 1189, 1196 (11th Cir. 2005). It states that a person seeking to challenge a forfeiture can do so if they are a party who was entitled to written notice prior to the forfeiture, but did not receive that notice. 18 U.S.C. § 983(e). To prevail, a plaintiff must demonstrate that: (1) the government knew, or reasonably should have known of his interest, but failed to take reasonable steps to provide notice; and (2) he did not know or have reason to know of the seizure in time to file a claim prior to forfeiture. This Court's review is limited to the issue of reasonable notice. It cannot review the merits of the forfeiture determination. *Mesa Valderrama*, 417 F.3d at 1196.[4]

---

[4] Plaintiff's motion was filed prior to CAFRA's passage and became ready for a decision after its passage. However, as already stated, whether or not CAFRA technically applies to the motion, that law really only codified existing practice. *See United States v. Elias*, 921 F.2d 870, 873 (9th Cir. 1990)(dismissal of Rule 41(e) motions proper where forfeiture proceeding is pending). The outcome of the case and the reasons for it are the same under both pre- and post-CAFRA law.

-4-

Regarding administrative forfeitures generally, the United States Court of Appeals for the Fourth Circuit has noted that challenges to the forfeitures have their roots in the Fourth and Fifth Amendments of the United States Constitution. The issue of notice is related to the Due Process Clause of the Fifth Amendment. The Court of Appeals has stated that "failure to provide adequate notice of an administrative forfeiture raises the prospect of the government taking ownership of private property while the former owner of that property remains wholly ignorant of the transaction. The adequacy of notice of an impending forfeiture is thus a matter of obvious constitutional magnitude." *United States v. Minor*, 228 F.3d 352, 356 (4th Cir. 2000)(citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Regarding due process, the United States Supreme Court has held that it is satisfied if notice sent by the government is "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Dusenbery v. United States*, 534 U.S. 161, 168 (2002)(quoting *Mullane*, 339 U.S. at 314). The notice does not have to actually be received as long as it is "reasonably calculated" to provide proper notice. Also, "heroic efforts" by the government are not required, only "reasonable" ones. *Id*. at 170. "'The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.'" *Id*. at 168, *quoting Mullane*, 339 U.S. at 315.

Here, the government relies on all of its attempts at notice, but primarily points to the notice sent on February 17, 1998 to Guilford County Jail. It has presented evidence that the

-5-

Case 1:97-cr-00291-NCT   Document 352   Filed 04/16/10   Page 5 of 7

mail was signed for by W.E. Thacker on February 23, 1998, that records from the jail show that Movant was incarcerated in the jail at that time, and that the practice of the jail at that time was to deliver certified mail to inmates within 24 hours of its delivery to the facility, excluding holidays and weekends. (Docket No. 248, Captain Williamson Decl. ¶ 4.) In his reply to the government's response, Movant criticizes the Government's notices sent to his former home address and to the incorrect jail as inadequate. However, he admits that he was served with the February 17, 1998 notice. His only complaint as to that notice is that it occurred "way after [forfeiture] procedures started." (Docket No. 251 at 3.)

Movant's argument cannot carry the day. Initially, it should be noted that his statement that the notice came "way after" the beginning of forfeiture proceedings is inaccurate. The money was seized on December 4, 1997. Just over a month later, the first round of notices was mailed out. Notice was then published over the three following weeks. About three weeks after that, Movant was successfully sent notice of the forfeiture. The DEA was not dilatory in pursuing the matter. More importantly, whether the notice came "way after" the beginning of forfeiture proceedings or not, Movant received actual notice[5] and was given to time to file a claim. The notice stated that he had twenty days to file a claim and the money was not actually forfeited until months later on August 17, 1998.

---

[5] Actual notice was not required so long as the government sent notice via certified mail to the facility where Movant was incarcerated and the facility had an adequate process for mail delivery to inmates. *See Dusenbery v. United States,* 534 U.S. 161 (2002). That requirement was satisfied in the present case through the delivery to the Guilford County Jail.

-6-

Movant did not file any claim to the money at any time. Instead, he apparently ignored the notice altogether and filed the current motion under Rule 41(e) about two years later. His own lack of diligence, not the government's, resulted in the forfeiture of his money. The government gave him actual notice of the pending forfeiture and time to respond. This was all that was required by the Constitution. Because Movant was provided with reasonable notice of the pending forfeiture, his motion for return of property should be denied.

**IT IS THEREFORE RECOMMENDED** that Movant's motion for return of property (Docket No. 243) be denied and that this action be dismissed except that the government may return to Movant the Temporary Resident Card referenced in the government's response brief if it is able.

/s/ P. Trevor Sharp
United States Magistrate Judge

Date: April 16, 2010

-7-

Case 1:97-cr-00291-NCT   Document 352   Filed 04/16/10   Page 7 of 7